Simmons, Jannace & Stagg, L.L.P.
Attorneys for Defendant
Chase Bank USA, N.A.
75 Jackson Avenue
Syosset, New York 11791
(516) 357-8100
Thomas E. Stagg (ts-0663)
Jacqueline M. Della Chiesa (jd-4184)

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In Re: | Case No.: 02-14638-cec |
| | Chapter 7 |
| NIGEL ANTHONY RUSSELL and DIANE RUSSELL, | |
| Debtors. | **REPLY**<br>**MEMORANDUM OF LAW** |
| NIGEL ANTHONY RUSSELL, | A.P. No.: 06-1502-cec |
| Plaintiff, | |
| v. | |
| CHASE BANK USA, NA, | |
| Defendant. | |

SIMMONS, JANNACE & STAGG, LLP
Attorneys for Defendant
Chase Bank USA, N.A.
75 Jackson Avenue
Syosset, New York 11791
(516) 357-8100

Submitted By:
Thomas E. Stagg (ts-0663)
Jacqueline M. Della Chiesa (jd-4184)

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES .......................................................................................ii

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ........................................................................................................... 3

POINT I
      CHASE IS NOT OBLIGATED TO MODIFY
      PLAINTIFF'S CREDIT REPORT, WHICH
      ACCURATELY REPORTED HIS ACCOUNT
      AS CHARGED OFF AND SOLD PRIOR TO
      HIS BANKRUPTCY FILING ...................................................................... 3

      A.    Chase's Refusal to Correct Plaintiff's
            Credit Report Is Not a Violation of the
            Discharge Injunction.................................................................. 4

      B.    FTC Commentary § 607(F)(6) to the FCRA Applies Only
            Applies Only to Credit Reporting Agencies, Not Creditors,
            Such as Chase ........................................................................... 8

      C.    Chase's Charged Off Notation on Plaintiff's
            Credit Report is Accurate and Complete ............................... 9

POINT II
      THIS COURT LACKS JURISDICTION TO ADJUDICATE
      PLAINTIFF'S FCRA AND DEFAMATION CLAIM................................... 13

CONCLUSION....................................................................................................... 16

# TABLE OF AUTHORITIES

## Federal

Acosta, Jr. v. TransUnion, LLC, 2007 WL 678647 * 16 (C.D.Cal. March 6, 2007) ........................................................................................................... 11,12

Atlas Machine & Iron Works, Inc. v. Bethlehem Steel Corp        (In re Atlas Machine & Iron Works Inc.), 239 B.R. 322, 332 (Bankr. E.D.Va. 1998) ...................................... 4

Bruno v. First USA Bank, N.A., 356 B.R. 89 (Bankr. W.D.N.Y. 2006)..................................... 1,3

Caltabiano v. BSB Bank & Trust Co., 387 F.Supp.2d 135, 140 (E.D.N.Y. 2005) ............................................................................................................. 8

Carriere v. Proponent Fed. Credit Union, 2004 WL 1638250 *1 (W.D. La. 2004) ............................................................................................................. 5

Close v. Edison, 2003 WL 22697825 *4 (Bankr.E.D.Pa. Oct. 29, 2003)................................ 14,15

Dickens v. TransUnion, 18 Fed.Apx. 315, 318 (6th Cir. 2001).................................... 10

DiGianni v. Stern's, 26 F.3d 346, 349 (2d 1994) ........................................................ 8,9

DiPrinzio v. MBNA Am. Bank, N.A., 2005 WL 2039175 (E.D.Pa. Aug. 24 2005) ........................................................................................................... 11,12

Garrett v. Trans Union, LLC, 2006 WL 2850499 (S.D.Ohio  Sept. 29, 2006) ........................ 10,12

Gordon v. Summit Bank (In re Gordon), 2000 WL 713742 * 2 (Bankr. E.D.Pa. May 1, 2000)..................................................................................... 5

In re Goodfellow, 298 B.R. 358 (Bankr.N.D.Iowa 2003) ............................................. 5

In re Irby, 337 B.R. 293, 296 (Bankr. N.D. Ohio 2005)................................................. 3

In re Lover, 337 B.R. 633, 636 (Bankr. N.D.Ohio 2005) ............................................. 7

In re Miller, 2003 WL 25273851 (Bankr.D.Idaho Aug. 15, 2003).............................. 14

In re Norman, 2006 WL 2818814 (Bankr.M.D.Ala. Sept. 29, 2006)........................... 6

In re Potes, 336 B.R. 731 (Bankr.E.D.Va 2005)........................................................... 14

In re Singley, 233 B.R. 170 (Bankr.S.D.Ga. 1999) ........................................................ 5

In re Singley, 233 B.R. 170, 174 (Bankr. S.D.Ga. 1999) ............................................. 5

In re Sommersdorf, 139 B.R. 700 (Bankr.S.D.N.Y. 1991)........................................... 5

In re Vogt, 257 B.R. 65, 70 (Bankr. D. Colo. 2000)................................................................. 1, 3

In re Weinhoeft, 2000 WL 33963628 (Bankr. C.D.Ill. 2000) ........................................ 5

Johnson v. First Nat'l Bank, 719 F.2d 270 (8th Cir. 1983) ........................................ 14

Jonas v. International Airline Employees, 2006 WL 1409721 at * 4
(S.D.N.Y. May 19, 2006)............................................................................................. 9

Myles v. General Motors Acceptance Corp., 1998 WL 299958 at *5
(E.D.La. June 4, 1998).................................................................................................. 9

Nelson v Chase Manhattan Mortg. Corp., 282 F.3d 1057 (9th Cir. 2002) .................... 9

Oliver v. Bank One, 2000 WL 33907677 (N.D.Miss. January 24, 2000) ...................... 7

Pacor, Inc. v. Higgins, 743 F.2d 984 (3rd Cir. 1984) ........................................... 14,15

Podell v. Citicorp Diners Club, Inc., 859 F.Supp. 701, 705 (S.D.N.Y. 1994)............................ 8,9

Porter v. Talbot, 355 F.Supp. 174, 177 (S.D.N.Y. 1973) ............................................. 9

Reyes v. FCC Nat'l Bank (In re Reyes), 238 B.R. 507 (Bankr.D.R.I. 1999) ............... 14

Rush v. Macy's New York, Inc., 775 F.2d 1554, 1557 (11th Cir. 1985) ...................... 8

Russell v. Equifax A.R.S., 74 F.3d 30 (2nd Cir. 1996).................................................. 6

Steele v. Ocwen Federal Bank, 258 B.R. 319, 320 (Bankr.D.N.H 2001)..................... 13

Sullivan v. Equifax, Inc., 2002 WL 799856 (E.D.Pa. 2002) ........................................ 6

White v. Trans Union, LLC, 462 F.Supp.2d 1079, 1082 (C.D. Cal. 2006).................... 8

**Statutes**

15 U.S.C. § 1681(d)(2)(A)(i) ......................................................................................... 9

15 U.S.C. § 1681a(f) ...................................................................................................... 8

15 U.S.C. § 1681s-2(b) ................................................................................................ 10

15 U.S.C. § 1692a ........................................................................................................... 7

16 C.F.R. 600 app. § 607(3)(F)(2) ................................................................................. 8

28 U.S.C. § 1334(b) ..................................................................................................... 15

GBL § 380-a(c)(2) .......................................................................................................... 9

**Miscellaneous**

FTC Commentary § 607(F)(6)................................................................................................. 2,3,8, 9

## **PRELIMINARY STATEMENT**

Chase moved to dismiss debtor's complaint because Chase's accurate reporting of the account as "charged off" with a balance due, made prior to the bankruptcy proceeding, is not a violation of § 524.  In its moving papers, Chase established that:

- The account was charged off prior to plaintiff's bankruptcy filing;

- Chase did <u>not</u> report the debts to any Credit Reporting Agency <u>after</u> the discharge was entered; and

- Chase had absolutely no contact with plaintiff after his debt was discharged.

 (Chase Mov. Mem. at 3.)

Plaintiff does not dispute these facts.  (Pl. Opp'n Mem. at 2.)  Because there is no dispute that Chase did not seek to collect the debt, there can be no § 524 violation.

In his opposition, plaintiff contends that Chase had an affirmative duty to amend his credit report once he was discharged in bankruptcy.  However, the court in <u>Bruno v. First USA Bank, N.A.,</u> 356 B.R. 89 (Bankr. W.D.N.Y. 2006), ruled that there was no affirmative duty for a lender to modify a credit report for a notation that was accurate when reported and made prior to plaintiff's bankruptcy.  The <u>Bruno</u> court agreed that merely reporting a debt prior to bankruptcy filing and discharge is not an act to collect a debt.

Plaintiff attempts to distinguish <u>Bruno</u> by claiming that it is not on point because the debtor there did not ask the creditor to correct its pre-discharge reporting, which the plaintiff here claims he did.  (Pl. Opp'n Mem. at 11.)[1]  Additionally, plaintiff claims that this case is different

---

[1]  Even if plaintiff did ask Chase to correct its previously reported account information, such a request would not comply with the FCRA procedure for dispute resolution since requests for correcting purportedly wrong credit information should be directed to the credit reporting agencies, not to the creditor.  There are presently no regulations that permit plaintiff to submit his dispute to Chase.  In any event, the court in <u>In re Vogt</u>, 257 B.R. 65, 70 (Bankr. D. Colo. 2000) addressed the identical issue and found that a creditor does not violate the discharge injunction by refusing to amend a credit report.

because here Chase made a pre-petition false statement to a credit reporting agency with respect to his subsequently discharged debt, which was not alleged in <u>Bruno</u>.  (<u>Id</u>.)  However, these distinctions have no bearing on whether Chase violated § 524's discharge injunction since plaintiff does not complain of any collection action taken by Chase following his discharge. Instead, he complains that Chase should have, but did not, correct credit information that was reported pre-petition.  <u>Bruno</u> specifically held that § 524 does <u>not</u> require Chase to amend its accurate pre-petition reporting to reflect that plaintiff's account was discharged in bankruptcy. The <u>Bruno</u> court recognized that § 524 exists to remedy discharge violations resulting from improper attempts to collect a discharged debt, not to remedy pre-discharge credit reporting issues.

Recognizing that he lacks a viable § 524 claim, plaintiff alleges a Fair Credit Reporting Act ("FCRA") and defamation claim on the basis that Chase did not amend its accurate pre-petition reporting to reflect that plaintiff's account was discharged in bankruptcy.  These claims cannot be maintained in Bankruptcy Court since the Bankruptcy Code does not permit litigation of non-bankruptcy claims when those claims are premised upon § 524 violations.  Since plaintiff admits that Chase took no post-discharge steps to collect his debt, there is no § 524 issue for this Court to address.  The FCRA issue and defamation claims are proverbial red herrings – their only purpose is to distract the Court from plaintiff's admission that Chase did not engage in any collection activity and consequently could not have violated § 524.

As discussed below, the cases cited by plaintiff in his opposition are distinguishable because they typically involve some affirmative act by a creditor, which is not present here.  In addition, plaintiff relies on authority that is simply not applicable to Chase.  For example, plaintiff's reliance on Federal Trade Commission ("FTC") Commentary § 607(F)(6) to the

FCRA is misplaced because that section applies only to credit reporting agencies, not to creditors such as Chase.

Because plaintiff cannot state a claim, his complaint should be dismissed.

## ARGUMENT

## POINT I

### CHASE IS NOT OBLIGATED TO MODIFY PLAINTIFF'S CREDIT REPORT, WHICH ACCURATELY REPORTED HIS ACCOUNT AS CHARGED OFF PRIOR TO HIS BANKRUPTCY FILING

There is no dispute that Chase reported the account as charged off prior to plaintiff's bankruptcy.  (Chase's Mov. Mem. at 2.)  Chase took no action to collect on the debt once plaintiff filed for bankruptcy.  Id. at 3.  Plaintiff does not dispute this.  (Pl. Opp'n Mem. at 2.) Plaintiff also does not dispute that under Vogt and Irby, a discharge does not cause the debt to disappear, but merely prohibits collection activity.[2]   As established in Chase's moving papers, the Bruno court already found that Chase has no affirmative duty to amend plaintiff's credit report to reflect the debt as a "0" balance.  See Bruno, 356 B.R. at 92 (no affirmative duty under § 524 for a lender to notify credit reporting agencies that a defalcation previously reported had been discharged).

In opposition to Chase's motion, plaintiff asserts three arguments.  First, plaintiff claims that Chase's refusal to modify his credit report to reflect a "0" balance is a violation of the discharge injunction.  As set forth below, the Vogt court already rejected this argument.  Plaintiff also contends that Chase had a duty under FTC Commentary § 607 (F)(6) to modify his credit report to reflect a "0" balance.  This claim also fails because that section only applies to credit

---

[2] See In re Vogt, 257 B.R. at 70 (Bankr. D. Colo. 2000) and In re Irby, 337 B.R. 293, 296 (Bankr. N.D. Ohio 2005).

reporting agencies, not creditors, like Chase.  Finally, plaintiff argues that Chase's pre-petition charged off notation on his credit report is incomplete and inaccurate because it should have been coded as "discharged in bankruptcy."  As explained below, simply because plaintiff's code may be "more" accurate does not mean that Chase's report was inaccurate.  Thus, plaintiff cannot sustain a claim against Chase.

**A.    Chase's Refusal to Correct Plaintiff's Credit Report**
       **Is Not a Violation of the Discharge Injunction**

In opposing Chase's motion, plaintiff claims that Chase's refusal to amend his credit report is a violation of the discharge injunction.  (Pl. Opp'n Mem. at 7.)  The court in Vogt specifically rejected this argument.  257 B.R. at 72.  The Vogt court held that the truthful reporting of information about a discharge debt does not violate the discharge injunction.   The court did not find error with the creditor in failing to modify the report after being asked to do so by the debtors.  Id.   There was no evidence that the creditor had manufactured a false report in order to extract payment.  Id. at 71.  But, even if the creditor's report was false, "if not done to extract payment of the debt, [it] is simply not an act proscribed by the Code."  Id.

Plaintiff's claim also ignores the fundamental purpose of credit reporting.  As set forth in Chase's moving papers, a conclusion that Chase violated § 524 would conflict with the express guidance promulgated by the FTC under the FCRA.  (Chase Mov. Mem. at 10-11.)  See Atlas Machine & Iron Works, Inc. v. Bethlehem Steel Corp. (In re Atlas Machine & Iron Works, Inc.), 239 B.R. 322, 332 (Bankr. E.D.Va. 1998) (an advertisement notice postponing a foreclosure action that was scheduled pre-petition did not violate the discharge injunction - postponement merely maintained the status quo and "did not harass, interfere or gain any advantage.").  Id.

Like Atlas Machine, Chase's reporting of plaintiff's account as charged off was done pre-petition.  Chase's notice served merely to truthfully report the relationship of the parties.  Indeed,

Chase's position is even more compelling since no violation was found in <u>Atlas Machine</u> – despite the fact that the creditor in that case took affirmative acts to postpone the foreclosure. Here, Chase did not engage in any act to collect once plaintiff filed for bankruptcy.  <u>See</u> <u>Gordon v. Summit Bank (In re Gordon)</u>, 2000 WL 713742 * 2 (Bankr. E.D.Pa. May 1, 2000) (no violation of the automatic stay for the creditor's refusal to delete its pre-petition reporting).[3]

The cases cited by plaintiff are not persuasive.  In all of the cases dealing with § 524 violations, the plaintiff sought relief for post-petition acts engaged in by a creditor to collect a debt.  None of the cases involved truthful pre-petition reporting, which is at issue here. <u>See</u> <u>In re Sommersdorf</u>, 139 B.R. 700 (Bankr.S.D.N.Y. 1991) (creditor had published an entry on non-debtor's credit report after debtor commenced his Chapter 13 bankruptcy); <u>In re Singley</u>, 233 B.R. 170 (Bankr.S.D.Ga. 1999) (creditor modified debtor's credit report post-petition); <u>In re Goodfellow</u>, 298 B.R. 358 (Bankr.N.D.Iowa 2003) (creditor made numerous telephone calls and mailings and reported the debt after the debtors filed their bankruptcy petition); <u>Carriere v. Proponent Fed. Credit Union</u>, 2004 WL 1638250 *1 (W.D. La. 2004) (debtor obtained discharge order in January 1998, but debtor's credit report continued to report first account as charged off after that date, and second account as charged off after November 1999);[4] <u>In re Norman</u>, 2006

---

[3] <u>Gordon v. Summit Bank (In re Gordon)</u>, 2000 WL 713742 * 2 (Bankr.E.D.Pa. May 1, 2000), is annexed to Chase's moving papers as Ex. "B."

[4] The <u>Carriere</u> court was mistaken in concluding that a debtor is not required to plead that the reporting was made "with the intent to collect" a debt.  In <u>Carriere</u>, the court ignored the clear language of § 524. In reaching this conclusion, the court relied on two cases that are distinguishable from the facts here: <u>In re Singley</u>, 233 B.R. 170, 174 (Bankr. S.D.Ga. 1999), and <u>In re Weinhoeft</u>, 2000 WL 33963628 (Bankr. C.D.Ill. 2000).  <u>Singley</u> does not stand for the proposition that the debtor was not required to plead that the reporting was made with the intent to collect a debt.  In that case, the creditor was denied summary judgment because it produced no evidence other than the credit report to show that it did not make the report with the intent to collect a debt.  Since the creditor made the motion, and thus bore the burden of establishing no material issue of fact, the court found that the creditor simply failed to meet its burden of proof.  In <u>Weinhoeft</u>, the court found that the complaint alleged facts which, if proven, suggested that the creditor engaged in a pattern of conduct that repeatedly violated the discharge injunction.  <u>Id.</u> at 2.  Even if the creditor's conduct was <u>de minimus</u> or mere technical violations, a factual basis existed for finding against the bank.  <u>Weinhoeft</u> is distinguishable because there the creditor reported the debtors 120 days delinquent on mortgage payments that the debtors were not obligated to make due to their bankruptcy discharge.  This is distinct from

WL 2818814 (Bankr.M.D.Ala. Sept. 29, 2006) (debtor obtained bankruptcy discharge in November 2004, but debtor's credit report reflected that creditor last updated and reported account in March 2005).

Here, Chase reported plaintiff's account as charged-off pre-petition.  Indeed, plaintiff's Experian and TransUnion credit reports confirm that the last time the account was reported was March 20002, one month prior to plaintiff's bankruptcy filing.  (Chase's Mov. Mem., Ex. "E.") Unlike the cases cited by plaintiff, Chase engaged in no activity to collect the debt after he filed for bankruptcy protection.

Likewise, plaintiff's reliance on <u>Sullivan v. Equifax, Inc.</u>, 2002 WL 799856 (E.D.Pa. 2002) and <u>Russell v. Equifax A.R.S.</u>, 74 F.3d 30 (2nd Cir. 1996) are equally unavailing.  In these cases, the court determined that reporting a debt may, under certain circumstances, be seen as a communication in connection with debt collection.  However, those district court cases involved the Fair Debt Collection Practices Act ("FDCPA") – not § 524.  In <u>Sullivan</u>, the plaintiff contacted the creditor verbally and in writing to dispute the report, but the creditor failed to mark the debt disputed.  And in <u>Russell</u>, plaintiff disputed the amount owed with the debt collector, but nonetheless received collection letters containing the inaccurate amount.  While each plaintiff's respective allegations regarding his or her disputed reporting were sufficient to sustain a FDCPA claim, neither court held that debt reporting is a collection activity.

---

Chase's truthful pre-petition reporting that an account was charged off.  Also, in <u>Weinhoeft</u>, the creditor notified the debtors that their property insurance had lapsed and had sent a mortgage loan coupon book to the debtors with a follow-up letter.  <u>Id.</u> at 2.  This direct contact with the debtors, which could be misconstrued as an attempt to collect a debt, is in stark contrast with the facts of this case, in which absolutely no post-discharge contact took place. Because the <u>Singley</u> and <u>Weinhoeft</u> cases are distinguishable, the <u>Carriere</u> court simply got it wrong in concluding that a debtor is not required to plead that a reporting be made "with the intent to collect" a debt.

The FDCPA cases relied upon by plaintiff are also easily distinguishable from cases that do not involve a debt collector.[5]  For example, in <u>Oliver v. Bank One</u>, 2000 WL 33907677 * 2 (N.D.Miss. January 24, 2000), the plaintiffs made the same type of argument asserted here.[6] They argued that the defendant's filing of a negative credit report constituted an "action to collect the debt."  The court rejected this argument.  Pursuant to <u>Vogt</u> and <u>Irby</u>, there can be no doubt that simply reporting truthfully that an account was charged off is not a collection activity in violation of the discharge injunction.  <u>See</u> <u>In re Lover</u>, 337 B.R. 633, 636 (Bankr. N.D.Ohio 2005) (questions whether plaintiff's action against creditor for mere reporting of pre-petition debt was viable from a legal standpoint in light of <u>Irby</u>).  Indeed, the <u>Bruno</u> court examined these identical cases and found they were inapplicable when the report, which was true and accurate when it was made, occurred prior to the bankruptcy filing. <u>See</u> <u>Bruno</u>, 356 B.R. at 91.

Plaintiff's attempt to distinguish <u>Bruno</u> by claiming he tried to resolve the matter with Chase also lacks merit.  First, submitting a letter to Chase is not the proper procedure for disputing one's credit report.  The FCRA has well-established and comprehensive procedures governing the resolution of disputes arising in connection with the furnishing of information to credit bureaus.  Yet, even if plaintiff could show that he disputed the report with the credit reporting agencies, <u>Vogt</u> makes it clear that Chase was under no obligation to modify plaintiff's credit report.

---

[5] Under the facts of this case, Chase could not be a debt collector under the FDCPA because the debt involved is its own debt.  <u>See</u> 15 U.S.C. § 1692a (a debt collector is a person who collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another).

[6] <u>Oliver v. Bank One</u>, 2000 WL 33907677 (N.D.Miss. January 24, 2000), is annexed as Ex. "A."

**B.      FTC Commentary § 607(F)(6) to the FCRA Applies Only to Credit Reporting Agencies, Not Creditors Such As Chase**

Plaintiff relies on FTC Commentary § 607(F)(6) to the FCRA in further support of his claim that Chase was obligated to modify his credit report to reflect a "0" balance. (Pl. Opp'n Mem. at 4.)  However, this section applies only to credit reporting agencies.

First, plaintiff does not contend that Chase is a credit reporting agency.[7]  See id. § 607 (listing credit reporting agencies only, not creditors, when discussing obligations and coverage throughout this section).  More importantly, there is ample precedent demonstrating that § 607 applies only to consumer reporting agencies.  See White v. Trans Union, LLC, 462 F.Supp.2d 1079, 1082 (C.D. Cal. 2006) (citing 16 C.F.R. 600 app. § 607(3)(F)(2)) ("[A] consumer reporting agency may include delinquencies on debts discharged in bankruptcy in consumer reports, but must accurately note the status of the debt (e.g., discharged, voluntarily repaid).") (emphasis added).  Plaintiff fails to cite any precedent applying the FTC Official Staff Commentary § 607(F)(6) to creditors.

Plaintiff further ignores that the FTC Official Staff Commentary § 607(F)(6) is expressly limited to "consumer reports."  The pre-petition account information Chase distributed is not a "consumer report" under the FCRA because the information was limited to transactions between

---

[7] The FCRA defines "consumer reporting agency" as follows:

> [A]ny person which, for monetary benefits, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f).  See DiGianni v. Stern's, 26 F.3d 346, 349 (2d 1994) (finding creditors were not consumer reporting agencies because "[t]he FCRA does not impose obligations upon a creditor who merely passes along information concerning particular debts" owed to it); Podell v. Citicorp Diners Club, Inc., 859 F.Supp. 701, 705 (S.D.N.Y. 1994) (same); see also Caltabiano v. BSB Bank & Trust Co., 387 F.Supp.2d 135, 140 (E.D.N.Y. 2005) (dismissing § 1681e claim because defendant was not a consumer reporting agency) (citing Rush v. Macy's New York, Inc., 775 F.2d 1554, 1557 (11th Cir. 1985) (holding that only a consumer reporting agency or user of reported information can be liable for claims under the FCRA)).

plaintiff and Chase.  See Podell, 859 F.Supp. at 705 (quoting § 1681a(d)(3)(A)); see also Porter v. Talbot, 355 F.Supp. 174, 177 (S.D.N.Y. 1973) (The FTC guidelines provide, "When a firm gives its own credit experience on a consumer to a credit bureau, that information does not constitute a consumer report.").  Creditors such as Chase, which furnish information to credit reporting agencies, are not themselves credit reporting agencies because the information they furnish is specifically exempt from the definition of a consumer report. See 15 U.S.C. § 1681(d)(2)(A)(i); GBL § 380-a(c)(2); DiGianni, 26 F.3d at 349; Jonas v. International Airline Employees, 2006 WL 1409721 at * 4 (S.D.N.Y. May 19, 2006) ("reported information clearly concerned a transaction between the consumer and the person making the report, which is not a consumer report within the meaning of the FCRA."); Podell, 859 F. Supp. at 705 (credit card companies' reporting of information to credit agencies did not convert them into CRA's and the information reported was not a consumer report); Myles v. General Motors Acceptance Corp., 1998 WL 299958 at *5 (E.D.La. June 4, 1998) (creditor that furnished information about car loan was not a CRA furnishing a consumer report).  Thus, plaintiff's reliance on FTC Commentary § 607(F)(6) to the FCRA is misplaced.

**C.    Chase's Charged Off Notation on Plaintiff's Credit Report is Accurate and Complete**

Finally, plaintiff contends that Chase's charged off notation on his credit report is incomplete and inaccurate because Chase should have reported his account under the Metro 2 Format Code "E," which provides for accounts that have been discharged through Chapter 7 bankruptcy.  (Pl. Opp'n Mem. at 7.)  Plaintiff cites no supporting precedent in his opposing memorandum, but his unauthorized "supplemental" opposition memorandum cites Nelson v Chase Manhattan Mortg. Corp., 282 F.3d 1057 (9th Cir. 2002).  (Pl. Supp. Opp'n Mem. at 2.) Nelson does not support plaintiff's claim that Chase's charged off notation was incomplete or

inaccurate.  <u>Nelson</u> merely addressed whether an individual has a private right of action under 15 U.S.C. § 1681-2(b) once a consumer disputes his credit report notation with a credit reporting agency.  <u>Id.</u> at 1060.  <u>Nelson</u> also involved the reporting on a non-debtor co-buyer's account, not the actual debtor's account as in this case.   Moreover, <u>Nelson</u> involved a mortgage report notation, not a credit card report.  Finally, even if Chase's internal policy recommends that it code an account as bankrupt for the laudable purpose of avoiding contact with parties in violation of bankruptcy laws, the FCRA does not require Chase to update its prior report to note plaintiff's bankruptcy.

To the contrary, as enumerated in <u>Garrett v. Trans Union, LLC</u>, 2006 WL 2850499 (S.D.Ohio  Sept. 29, 2006)[8], Chase's charged off notation on plaintiff's credit report is accurate. In <u>Garrett</u>, the court found that the creditor's report of debtor's bankruptcy with a balance owed and the balance as a "profit and loss write off" and "charged as bad debt" was technically accurate to sustain summary judgment.  <u>Id.</u> at *10.  During the debtor's bankruptcy, he reached an agreement with the defendant regarding a deed in lieu of foreclosure instead of putting the mortgage in bankruptcy.  The debtor claimed he was denied credit due to the defendant's entry on his credit report.  The debtor disputed the claim with a consumer reporting agency who in turn notified the defendant of the dispute. The defendant reported the remaining "amount owed" was $32,400, but that the entry should read "Profit Loss Write Off".  <u>Id.</u> at *2.  The debtor claimed the proper reporting status was a Metro 2 code "89," which reads deed received in lieu of foreclosure on a defaulted mortgage.  <u>Id.</u> at *10.  The court ruled that "while Code "89" [debtor's code] was more specific, that does not mean that Code "97" [defendant's code], which is less specific, is inaccurate."   <u>Id.</u>   The <u>Garrett</u> court relied on the Sixth Circuit's holding in <u>Dickens v. TransUnion</u>, 18 Fed.Apx. 315, 318 (6th Cir. 2001), which held that "information on a credit

---

[8] <u>Garrett v. Trans Union, LLC</u> is annexed as Ex. "B."

report is accurate under the FCRA if it is 'technically accurate' or 'accurate on its face' even if it might be 'misleading or incomplete in some respect.'" Id. Thus, under Garrett and Dickens, even if plaintiff is correct that the Metro 2 Format Code (E) is a more accurate or more complete way for Chase to report plaintiff's account, the FCRA does not require that Chase update its prior accurate reporting to note plaintiff's bankruptcy.

Courts that have distinguished the "technically accurate" standard in application to the FCRA, such as Acosta v. TransUnion, LLC, 2007 WL 678647 (C.D.Cal. March 6, 2007) and DiPrinzio v. MBNA Am. Bank, N.A., 2005 WL 2039175 (E.D.Pa. Aug. 24 2005) focused on facts that are completely distinguishable to the facts here.

For example, the court in Acosta v. TransUnion, LLC, 2007 WL 678647 * 16 (C.D.Cal. March 6, 2007), did not involve a dispute between a consumer and a creditor; it involved a dispute between a consumer and a credit reporting agency. More specifically, it concerned a class action settlement among consumers and consumer reporting agencies where the court was asked to determine whether the settlement was fair, adequate and reasonable. The Acosta court was not required to analyze the FCRA nor did it examine the "technically accurate" argument. Indeed, the Acosta court acknowledged that it was unable to determine the merits of the contested facts and legal issues before it. Id. The only context in which the Acosta court addressed the "technically accurate" standard was to reference the federal court's holding in DiPrinzio v. MBNA Am. Bank, N.A., 2005 WL 2039175 (E.D.Pa. Aug. 24 2005), which rejected it.

However, the plaintiff in DiPrinzio v. MBNA Am. Bank, N.A., 2005 WL 2039175 *4 (E.D.Pa. Aug. 24 2005) never filed for bankruptcy. Rather, she divorced from her husband, who the plaintiff learned had taken out a large cash advance on their joint credit card. The creditor

continued to collect the payment from the plaintiff, but she refused to pay. When the creditor charged off the account and the plaintiff disputed the report with a credit reporting agency, the creditor failed to update the report to reflect that the account was in dispute. Rather, the creditor responded that the "account information [was] accurate as of date reported." Id. at * 1.

In rejecting the "technically accurate" argument, the court found that the creditor's failure to note that the plaintiff's account was in dispute or that she had separated from her husband could mislead potential creditors into thinking that she had failed to repay money that she herself had borrowed. Id. at *4.

Unlike DiPrinzio, the Garrett court dealt with credit reporting in the context of a bankruptcy filing. Against that backdrop, the court specifically held that lenders reading the credit report (which reported the profit loss instead of the deed in lieu of foreclosure) would understand that the [creditor] is not attempting to collect any money from plaintiff." Garrett, 2006 WL 2850499 at * 10. The Garrett court further held that there was no evidence that lenders reviewing the plaintiff's credit report mis-perceived the entry to the plaintiff's detriment." Id.

Likewise, here, there is no question that Chase's report would not confuse a potential creditor into believing that Chase was attempting to collect the debt. Merriam-Webster defines "charge off" as to treat as a loss. Thus, potential creditors reviewing plaintiff's credit report would understand that Chase was not attempting to collect the debt. Moreover, plaintiff does not allege that that he was denied credit because of the charged off report or that a lender reviewed his credit report and was somehow misled by the charged off notation.

In light of the facts at issue in Acosta and DiPrinzio, the courts were clearly concerned with different circumstances that are simply not present here. The plaintiff in DiPrinzio not only had her credit tainted by her ex-husband, but she was continually harassed by the creditor

seeking to collect payment.  Here, unlike <u>DiPrinzio</u>, there is no question that plaintiff incurred the debt.  It is also undisputed that Chase did not engage in any act to collect the debt once plaintiff filed for bankruptcy.  Plaintiff does not allege that the charged off notation on his credit report is confusing or misleading.  (Chase's Mov. Mem., Ex. "E.")  In fact, plaintiff's complaint is completely devoid of any such allegation.  (<u>Id.</u>)  Accordingly, Chase's charged off notation was complete and accurate.

## POINT II

### THIS COURT LACKS JURISDICTION TO ADJUDICATE <br> PLAINTIFF'S FCRA AND DEFAMATION CLAIM

The Bankruptcy Code does not permit litigation of non-bankruptcy claims when those claims are premised upon § 524 violations.  Plaintiff's FCRA and defamation claims are an attempt to litigate the same conduct that forms the basis of plaintiff's § 524 claim. These claims are not permitted because they are outside the context and limits of the Bankruptcy Code's detailed provisions for the resolution of bankruptcy-related claims.

Plaintiff mistakenly contends that the "related to" jurisdiction under the bankruptcy code confers jurisdiction over his claims.  (Pl. Opp'n Mem. at 13.)  Bankruptcy courts have consistently rejected this argument by finding that post-discharge claims, like plaintiff's FCRA and defamation claims, inure no benefit to the estate.  Moreover, bankruptcy courts cannot invoke state laws, regardless of the factual nexus to a violation of a discharge order, unless the result will conceivably impact the estate.  In <u>Steele v. Ocwen Federal Bank</u>, 258 B.R. 319, 320 (Bankr.D.N.H 2001), debtor moved to reopen his bankruptcy proceeding for violation of the discharge injunction and federal and state fair debt collection acts.  The court held that the debtor's claims were not "core proceedings" because the claims were not created by the Bankruptcy Code or based upon rights which could not be pursued outside of bankruptcy

context.  Nor did they fall under the Court's "related to" jurisdiction because any recovery on the debtor's part would be his alone and not inure to the benefit of the bankruptcy estate.  Id. at 322.  The court found that the FDCPA collection claims stand alone and could be asserted regardless of the bankruptcy case.  Id.  See also, Close v. Edison, 2003 WL 22697825 *4 (Bankr.E.D.Pa. Oct. 29, 2003) (dismissing state law action claim where post-petition (and post-discharge) conduct was not property of estate and would not benefit or otherwise have conceivable effect on bankruptcy estate); Reyes v. FCC Nat'l Bank (In re Reyes), 238 B.R. 507 (Bankr.D.R.I. 1999) (same).

None of the cases relied on by plaintiff permitted a bankruptcy court to hear a FCRA claim.  See e.g., Pacor, Inc. v. Higgins, 743 F.2d 984 (3rd Cir. 1984) (state law claim cannot be maintained in bankruptcy because the mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of § 1471(b)); Johnson v. First Nat'l Bank, 719 F.2d 270 (8th Cir. 1983) (bankruptcy court lacks authority to stay redemption period indefinitely).  Plaintiff cites to no authority in this circuit that the Bankruptcy Code and FCRA can "co-exist."  (Pl. Opp'n Mem. at 13.)  In In re Miller, 2003 WL 25273851 (Bankr.D.Idaho Aug. 15, 2003) the debtor in seeking relief against the credit reporting agency, not a creditor, conceded that the credit reporting agency was not a creditor, and thus the court determined there could be no § 524 liability.  Id. at * 2.  Against that backdrop, the debtor argued that he would have no recourse under the FCRA.  The court did not address an FCRA claim nor claim to have jurisdiction to do so.  Rather, the court held that no claim could be made under the bankruptcy code against an entity that is not attempting to "enforce or collect a pre-petition debt."  Id.  The court would not, through judicial fiat, expand the § 524 discharge injunction remedy.  Id. at *3.  Plaintiff's reliance on In re Potes,

336 B.R. 731 (Bankr.E.D.Va 2005) is also unpersuasive.  In the context of moving to reopen a bankruptcy case, the Potes court determined that where a debtor has asserted claims under the Bankruptcy Code and the FCRA, the FCRA claim does not prevent the debtor from asserting a code violation in bankruptcy court.  The court did not hold that a Bankruptcy Court could hear the FCRA claim.

It is significant that each of these courts cited Vogt, which recognized that a Bankruptcy Court lacks jurisdiction over statutory or state law claims because those claims stood on their own, separate from the underlying bankruptcy case.  (See Steele v. Ocwen Federal Bank, 258 B.R. at 322 (quoting Pacor, Inc. v. Higgins, 743 F.2d at 994); Close v. Edison, 2003 WL 22697825 at *3; In re Miller, 2003 WL 25273851 at * 3.)  This is in keeping with the well-established notion that when a claim can be brought by a debtor regardless of his or her bankruptcy case, the court, as a court of limited jurisdiction, will not have jurisdiction over such a claim.  See id.; 28 U.S.C. § 1334(b).  Like Vogt, plaintiff's FCRA and state law claims arose after his discharge and stand (and fall) on their own, regardless of the bankruptcy case. Consequently, this Court has no jurisdiction to hear those claims.

## <u>CONCLUSION</u>

Chase respectfully asks for judgment on the pleadings pursuant to Rule 12(b)(6) dismissing plaintiff's complaint with prejudice, and for such further relief as deemed just and proper.

Dated:  Syosset, New York
      April 4, 2007

                Respectfully Submitted,

                SIMMONS, JANNACE & STAGG, LLP

                By: <u>/s/ Thomas E. Stagg</u>
                     Thomas E. Stagg
                     Jacqueline M. Della Chiesa

                Attorneys for Defendant Chase Bank USA, N.A.
                75 Jackson Avenue
                Syosset, New York  11791
                (516) 357-8100

Reply Memo of Law fin ecf